UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


NATHANIEL ERKE,

                    Petitioner,

v.                                        Case No. 3:15-cv-493-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

## ORDER

### I. Status

Petitioner Nathaniel Erke, an inmate of the Florida penal system, initiated this action on April 20, 2015, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. In the Petition, Erke challenges a 2010 state court (Duval County, Florida) judgment of conviction for armed burglary and two counts of armed robbery. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response; Doc. 10) with exhibits (Resp. Ex.). On September 3, 2015, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 5), admonishing Erke regarding his obligations and giving Erke a time frame in which to submit a reply. Erke submitted a brief in reply. See Petitioner's Reply to Respondents' Answer Brief (Reply; Doc. 11). This case is ripe for review.

## II. Procedural History

On March 25, 2009, the State of Florida charged Erke with armed burglary (count one) and armed robbery (counts two and three). <u>See</u> Resp. Ex. A at 15-16, Information. On February 25, 2010, Erke entered a guilty plea to all three charges. <u>See</u> <u>id.</u> at 42-43, 107-18, Transcript of the Plea Proceeding (Plea Tr.). On April 7, 2010, the court sentenced Erke to a term of imprisonment of thirty-five years on each count, to run concurrently with each other. <u>See</u> <u>id.</u> at 44-50, 147-205, Transcript of the Sentencing Hearing (Sentencing Tr.).

On direct appeal, Erke, with the benefit of counsel, filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). <u>See</u> Resp. Ex. B. Erke filed a pro se brief, arguing that (1) the trial court should have appointed conflict-free counsel to advise him about his motion to withdraw the plea; (2) counsel misadvised him about the sentencing possibilities; (3) the trial court erred when it struck his pro se motion to withdraw the plea as a nullity due to representation when he asserted an adversarial relationship with counsel; (4) the trial court committed fundamental error when it imposed a vindictive sentence; (5) he was not fully aware of the consequences of his plea; (6) he was led to expect a lenient sentence that was similar to his co-defendants' sentences; (7) the trial court erred when it accepted his plea without the State identifying its evidence; (8) the court accepted his plea when he

continued to maintain his innocence; and (9) the court failed to: (a) consider the benefits of a youthful offender sentence, and (b) provide reasons for not sentencing him under the youthful offender guidelines. <u>See</u> Resp. Ex. E. On September 23, 2011, the appellate court affirmed Erke's conviction and sentence per curiam, <u>see</u> Resp. Ex. F, and later denied his motion for rehearing on December 5, 2011, <u>see</u> Resp. Exs. G; H. The mandate issued on December 21, 2011. <u>See</u> Resp. Ex. I.

On December 14, 2011, Erke filed a pro se motion for reduction or modification of sentence pursuant to Florida Rule of Criminal Procedure 3.800(c). <u>See</u> Resp. Ex. J. The court denied the motion on January 11, 2012. <u>See</u> Resp. Ex. K.

On April 11, 2012, Erke filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion). <u>See</u> Resp. Ex. L at 5-32. In his request for post-conviction relief, he asserted that counsel (Michael Bossen) was ineffective because he failed to: challenge Erke's sentence on the basis of bias, prejudice, vindictiveness, and/or disparity (ground one); procure a sentencing cap prior to the open plea (ground four); and move to disqualify the sentencing judge (ground five). Additionally, he stated that counsel was ineffective because he advised him to reject the State's plea offer for 9.2 years (ground three). He also asserted that his plea was involuntary because he relied on counsel's advice that the open

plea would result in a youthful offender sentence (ground two). On September 28, 2012, the circuit court denied his Rule 3.850 motion. See id. at 35-82. Erke filed an appellate brief, see Resp. Ex. M, and the State filed a notice that it did not intend to file an answer brief, see Resp. Ex. N. On February 14, 2013, the appellate court affirmed the court's denial of post-conviction relief per curiam, see Resp. Ex. O, and later denied his motion for rehearing, see Resp. Exs. P; Q. The mandate issued on April 18, 2013. See Resp. Ex. R.

On August 8, 2013, Erke filed a pro se petition for writ of habeas corpus. See Resp. Ex. S. In the petition, he asserted that counsel was ineffective because he failed to raise the following issues on direct appeal: (1) the sentencing judge violated Erke's right to due process when he commented on the truthfulness of Erke's testimony and other impermissible factors upon which the sentence was based; (2) the sentencing judge abused his discretion and committed fundamental error when he imposed a vindictive sentence; (3) counsel advised him to reject the State's plea offer of 110 months (9.2 years); (4) counsel misadvised him when he told him that either a youthful offender sentence of no more than six years, or a non-prison sanction would be possibilities during sentencing, and failed to inform him that the trial court would have to find a specific reason for a downward departure; (5) the trial court erred when it denied his pro se motion to withdraw the

plea without appointing conflict-free counsel to advise him; and
(6) a successor judge improperly sentenced him. The appellate court
directed the State to respond to grounds two and six. <u>See</u> Resp.
Exs. T; V. The State responded, <u>see</u> Resp. Exs. U; W, and Erke filed
a reply, <u>see</u> Resp. Ex. X. On December 2, 2014, the appellate court
denied the petition on the merits, <u>see</u> Resp. Ex. Y, and later
denied Erke's motions for rehearing, <u>see</u> Resp. Exs. Z; AA; BB.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year
limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner
to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez
v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir.
2011). "In deciding whether to grant an evidentiary hearing, a
federal court must consider whether such a hearing could enable an
applicant to prove the petition's factual allegations, which, if
true, would entitle the applicant to federal habeas relief."
<u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y,
Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>.
<u>denied</u>, 137 S.Ct. 2245 (2017). "It follows that if the record
refutes the applicant's factual allegations or otherwise precludes
habeas relief, a district court is not required to hold an
evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts

of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Erke's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), <u>cert</u>. <u>granted</u>, 137 S.Ct. 1203 (2017); <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court

provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011) (citation omitted); see also Johnson v. Williams, 568 U.S. 289, 301 (2013).[1] Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause

---

[1] The presumption is rebuttable and "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Johnson, 133 S.Ct. at 1096-97. However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances . . . ." Johnson, 568 U.S. at 302.

allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

---

[2]    The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S.Ct. 1103 (2017).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S.Ct. 2298 (2017); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made"); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. Wilson, 834 F.3d at

1239; see Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), cert. denied, 138 S.Ct 925 (2018).[3] However, in Wilson, the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court. 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," Renico,[4] 559 U.S. at 773, 130 S.Ct. 1855 (quoting Visciotti,[5] 537 U.S. at 24, 123 S.Ct. 357), and presume that it "follow[ed] the law," Donald,[6] 135 S.Ct. at 1376 (quoting Visciotti, 537 U.S. at 24, 123 S.Ct. 357).

Id. at 1238.

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338

---

[3]    Although the United States Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it." Butts, 850 F.3d at 1205 n.2.

[4]    Renico v. Lett, 559 U.S. 766 (2010).

[5]    Woodford v. Visciotti, 537 U.S. 19 (2002).

[6]    Woods v. Donald, 135 U.S. 1372 (2015).

(quoting <u>Richter</u>, 562 U.S. at 102-03). "This standard is 'meant to be' a difficult one to meet." <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 876 F.3d 1039. 1053 (11th Cir. 2017) (quoting <u>Richter</u>, 562 U.S. at 102). Thus, to the extent that Erke's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal

11

> rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365,
> 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per
> curiam) (quoting <u>Picard v. Connor</u>, 404 U.S.
> 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438
> (1971)). To provide the State with the
> necessary "opportunity," the prisoner must
> "fairly present" his claim in each appropriate
> state court (including a state supreme court
> with powers of discretionary review), thereby
> alerting that court to the federal nature of
> the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115
> S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S.
> 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1
> (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state

remedies results in a procedural default which raises a potential

bar to federal habeas review. The United States Supreme Court has

explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's
> conviction and sentence are guided by rules
> designed to ensure that state-court judgments
> are accorded the finality and respect
> necessary to preserve the integrity of legal
> proceedings within our system of federalism.
> These rules include the doctrine of procedural
> default, under which a federal court will not
> review the merits of claims, including
> constitutional claims, that a state court
> declined to hear because the prisoner failed
> to abide by a state procedural rule. <u>See</u>,
> <u>e.g.</u>, <u>Coleman</u>,[7] <u>supra</u>, at 747-748, 111 S.Ct.
> 2546; <u>Sykes</u>,[8] <u>supra</u>, at 84-85, 97 S.Ct. 2497.
> A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes
> federal review of the claims if, among other

---

[7] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[8] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010); <u>In Re Davis</u>, 565 F.3d 810, 821 (11th Cir. 2009). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S.Ct. 2639).[9] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>.

---

[9]     <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In <u>Martinez</u>, the Supreme Court modified the general rule in
<u>Coleman</u>[10] to expand the "cause" that may excuse a procedural
default. 132 S.Ct. at 1315.

> Allowing a federal habeas court to hear a
> claim of ineffective assistance of trial
> counsel when an attorney's errors (or the
> absence of an attorney) caused a procedural
> default in an initial-review collateral
> proceeding acknowledges, as an equitable
> matter, that the initial-review collateral
> proceeding, if undertaken without counsel or
> with ineffective counsel, may not have been
> sufficient to ensure that proper consideration
> was given to a substantial claim. From this it
> follows that, when a State requires a prisoner
> to raise an ineffective-assistance-of-trial-
> counsel claim in a collateral proceeding, a
> prisoner may establish cause for a default of
> an ineffective-assistance claim in two
> circumstances. The first is where the state
> courts did not appoint counsel in the initial-
> review collateral proceeding for a claim of
> ineffective assistance at trial. The second is
> where appointed counsel in the initial-review
> collateral proceeding, where the claim should
> have been raised, was ineffective under the

---

[10] "Negligence on the part of a prisoner's postconviction
attorney does not qualify as 'cause.'" <u>Maples v. Thomas</u>, 565 U.S.
266, 280 (2012) (citing <u>Coleman</u>, 501 U.S. at 753). The Court
reasoned that, under principles of agency law, the attorney is the
prisoner's agent, and therefore, the principal bears the risk of
negligent conduct on the part of his agent. <u>Coleman</u>, 501 U.S. at
753-54. In <u>Coleman</u>, the alleged ineffectiveness of counsel was on
appeal from an initial-review collateral proceeding, and in that
proceeding the prisoner's claims had been addressed by the state
habeas trial court. <u>Id</u>. at 755. However, the <u>Martinez</u> Court
addressed inadequate assistance of counsel at an initial-review
collateral proceeding.

> standards of <u>Strickland v. Washington</u>, 466
> U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
> (1984). To overcome the default, a prisoner
> must also demonstrate that the underlying
> ineffective-assistance-of-trial-counsel claim
> is a substantial one, which is to say that the
> prisoner must demonstrate that the claim has
> some merit. <u>Cf.</u> <u>Miller-El v. Cockrell</u>, 537
> U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931
> (2003) (describing standards for certificates
> of appealability to issue).

<u>Id</u>. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." <u>Carrier</u>, 477 U.S. at 496,
> 106 S.Ct. at 2649. "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v.</u>

<u>Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v.</u> <u>Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v.</u> <u>Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability

that, but for counsel's unprofessional errors,
the result of the proceeding would have been
different. A reasonable probability is a
probability sufficient to undermine confidence
in the outcome." Id., at 694, 104 S.Ct. 2052.
It is not enough "to show that the errors had
some conceivable effect on the outcome of the
proceeding." Id., at 693, 104 S.Ct. 2052.
Counsel's errors must be "so serious as to
deprive the defendant of a fair trial, a trial
whose result is reliable." Id., at 687, 104
S.Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the

absence of any iron-clad rule requiring a court to tackle one prong

of the Strickland test before the other." Ward v. Hall, 592 F.3d

1144, 1163 (11th Cir. 2010). Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment

violation, "a court need not address the performance prong if the

petitioner cannot meet the prejudice prong, and vice-versa." Id.

(citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)).

As stated in Strickland: "If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be

followed." Strickland, 466 U.S. at 697.

The United States Supreme Court has long recognized that

Strickland's two-part inquiry applies to ineffective assistance of

counsel claims arising out of the plea process. See Hill v.

Lockhart, 474 U.S. 52, 57 (1985).[11] In 2012, in companion decisions

---

[11]     In the context of an ineffective assistance challenge to
the voluntariness of a guilty or no contest plea, a petitioner must

in <u>Missouri v. Frye</u>, 566 U.S. 134 (2012), and <u>Lafler v. Cooper</u>, 566 U.S. 156 (2012), the Supreme Court clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." <u>In re Perez</u>, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam) (footnote omitted). In <u>Lafler</u>, the parties agreed that counsel's performance was deficient when he advised the defendant to reject the plea offer on the grounds he could not be convicted at trial. <u>See</u> 566 U.S. at 163. Thus, the Supreme Court articulated a three-part test to prove prejudice in the context of a foregone guilty plea.

> In contrast to <u>Hill</u>, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (<u>i.e.</u>, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the

---

show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59 (1985); <u>see</u> <u>Lynch v. Sec'y, Fla. Dep't of Corr.</u>, 776 F.3d 1209, 1218 (11th Cir. 2015) (citation omitted) (stating that, to succeed on a claim that counsel was ineffective because he advised petitioner to plead guilty, petitioner "must prove that: (1) counsel's advice was deficient; and (2) 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'"), <u>cert</u>. <u>denied</u>, 136 S.Ct. 798 (2016).

> offer's terms would have been less severe than
> under the judgment and sentence that in fact
> were imposed.

Id. at 163-64; see Frye, 566 U.S. at 147; Gissendaner v. Seaboldt,

735 F.3d 1311, 1317-19 (11th Cir. 2013).

A state court's adjudication of an ineffectiveness claim is

accorded great deference.

> "[T]he standard for judging counsel's
> representation is a most deferential one."
> Richter, - U.S. at -, 131 S.Ct. at 788. But
> "[e]stablishing that a state court's
> application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d)
> are both highly deferential, and when the two
> apply in tandem, review is doubly so." Id.
> (citations and quotation marks omitted). "The
> question is not whether a federal court
> believes the state court's determination under
> the Strickland standard was incorrect but
> whether that determination was unreasonable -
> a substantially higher threshold." Knowles v.
> Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411,
> 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument
> that counsel satisfied Strickland's
> deferential standard," then a federal court
> may not disturb a state-court decision denying
> the claim. Richter, - U.S. at -, 131 S.Ct. at
> 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014);

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to

the deference to counsel's performance mandated by Strickland, the

AEDPA adds another layer of deference--this one to a state court's

decision--when we are considering whether to grant federal habeas

relief from a state court's decision." Rutherford v. Crosby, 385

F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

(2010).

### D. Ineffective Assistance of Appellate Counsel

The two-part Strickland standard also governs a claim of ineffective assistance of appellate counsel. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). The Eleventh Circuit has stated:

> To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. at 2064.

Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1331 (11th Cir. 2016), cert. denied, 137 S.Ct. 505 (2016).

As with a claim of ineffective assistance of trial counsel, the combination of Strickland and § 2254(d) requires a doubly deferential review of a state court decision regarding the performance of appellate counsel. See Richter, 562 U.S. at 105; see

also Gissendaner, 735 F.3d at 1323 ("This double deference is
doubly difficult for a petitioner to overcome, and it will be a
rare case in which an ineffective assistance of counsel claim that
was denied on the merits in state court is found to merit relief in
a federal habeas proceeding.") (quotation marks and alteration
omitted). Indeed, the Supreme Court has opined that "[i]f this
standard is difficult to meet, that is because it was meant to be."
Richter, 562 U.S. at 102.

When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was
> "within the wide range of reasonable
> professional assistance." Id.[12] at 689, 104
> S. Ct. 2052. Appellate counsel has no duty to
> raise every non-frivolous issue and may
> reasonably weed out weaker (albeit
> meritorious) arguments. See Philmore v.
> McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).
> "Generally, only when ignored issues are
> clearly stronger than those presented, will
> the presumption of effective assistance of
> counsel be overcome." Smith v. Robbins, 528
> U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756
> (2000) (quoting Gray v. Greer, 800 F.2d 644,
> 646 (7th Cir. 1986)); see also Burger v. Kemp,
> 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d
> 638 (1987) (finding no ineffective assistance
> of counsel when the failure to raise a
> particular issue had "a sound strategic
> basis").

Overstreet, 811 F.3d at 1287; see also Owen v. Sec'y, Dep't of
Corr., 568 F.3d 894, 915 (11th Cir. 2009) (stating "any
deficiencies of counsel in failing to raise or adequately pursue

---

[12]     Strickland, 466 U.S. at 689.

[meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004) (citations omitted); see Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) ("In order to establish prejudice, we must first review the merits of the omitted claim. Counsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'") (citations omitted).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Erke asserts that the trial court committed fundamental error when it imposed a "constructively vindictive sentence"[13] that violated his right to due process of law. Petition at 4. He states that the trial judge imposed a vindictive sentence, as evidenced by: (1) his thirty-five year sentence arising from his open plea which "greatly exceeded the State's most recent plea offer" of 9.2 years that he rejected; (2) the co-defendants, whom the State acknowledged were more culpable, received more lenient

---

[13]     See Baxter v. State, 127 So.3d 726, 733 (Fla. 1st DCA 2013) ("Judicial vindictiveness has two strains: actual vindictiveness and constructive vindictiveness.").

sentences;[14] (3) there was a "huge disparity" between his thirty-five year sentence and the State's "far more lenient" sentencing recommendation of a guidelines sentence (110 months or approximately 9.2 years); and (4) the pre-sentence investigation report recommended a five-year sentence. Id. at 4-5. Erke argued this issue on direct appeal in his pro se brief, see Resp. Ex. E at 5-7, and the appellate court affirmed Erke's conviction per curiam, see Resp. Ex. F.[15]

If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Erke is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, Erke's claim, nevertheless, is

---

[14]    Erke's two co-defendants, one of whom is his older brother, entered negotiated pleas and were sentenced to terms of incarceration of ten years (Michael Erke) and fifteen years (Donald Royall). See Sentencing Tr. at 153, 156.

[15]    The State did not file a responsive brief. See http://jweb.flcourts.org/pls/ds/ds_docket, Case No. 1D10-4766.

without merit. Erke entered an open plea before Judge McCallum, and was aware that a different judge would preside over his sentencing. See Plea Tr. at 109-10, 112. He understood that the guidelines sentencing range was from a term of imprisonment of 9.2 years to life imprisonment. See id. at 110, 112-15. Judge Soud, as the sentencing judge, neither initiated nor participated in any plea negotiations with Erke.[16] At sentencing, Erke and his mother testified, and Judge Soud inquired about the extent of Erke's involvement in the crimes. Before pronouncing the sentence, Judge Soud stated in pertinent part:

> Well, at this point in the process, let me just kind of walk through briefly what I'm looking at and what I'm considering. My remarks are not going to be overly long.
>
> The Court does note mitigating factors. Number one, that this defendant has no criminal record whatsoever, and by all appearances this was his first interaction with the criminal justice system, that certainly is a strong mitigator in his favor.
>
> His father dying a few months before this, while tragic, is not as strong a mitigator, but certainly a factor the Court considers.
>
> There was not a terribly large amount gleaned from my watching his interview. And by that, I mean the defendant who's present before the Court is here.

---

[16]    See Plea Tr.; see also Sentencing Tr.; Resp. Ex. L at 37 n.1 ("The judge who presided over [Erke]'s sentencing hearing was not the same judge who presided at the plea colloquy.").

There was, however, a significant amount gleaned from reviewing the interview of his brother. The testimony at the deposition was he was under the influence, he certainly did not appear to be under the influence at the time of his statement. He is coughing significantly, saying he may be coming down with a cold. He reads the first line of that Constitutional rights form very clearly, and at a nice pace for reading. He does mumble some, but the speech pattern and pace frankly, are similar to his brother[']s in that regard.

So, my observation of him in the interview room, there would be no basis whatsoever for this Court to believe that he was under the influence at the time of giving that statement.

His brother is very clear that there were three people involved, not four. Which does not allow this Court for purposes of today's hearing to accept as true what the defendant has said, that there is a fourth person involved.

Interestingly to this Court, and there are among others, and I'm not going to summarize every one of them. Very interestingly to this Court, the detective asks his brother, Michael, how did ya'll get in, who's at the back door, three of us, all three of us; how did ya'll get in, and this is somewhere between 18 to 20 minutes into the video, we jimmied the door with a pocketknife, and the defendant today told me he has a pocketknife in his pocket, and he has shotgun shells in his pocket, whether or not they match the shotgun that was taken, whatever the case may be, I don't know what the source of that is. **But the reality of it is, there is simply nothing this Court can lean on that would warrant this Court accepting as true the defendant's testimony that he stayed in the car the whole time.**

Therefore, the Court can only come to the conclusion that there were three people in the

car; that there were three people involved at the time of the burglary; that there were three people involved when the two victims were at gunpoint, admittedly perhaps not at the hands of this defendant, but that the **defendant was actively involved in kicking and beating both victims.**

**It is indeed unusual, and I almost cannot explain how Nathaniel Erke's first involvement in the criminal justice system is the commission of two life felonies**, I am almost at a loss.

The hopes of a military career, I think National Guard, Reserves, or something like that; graduated from Terry Parker; observing his demeanor in court today, he seems humble, he seems respectful, he is not sitting in a posture that would lead this Court to believe he has an attitude or disdain for what he is going through, he has seemed respectful at all times today. **But that simply cannot take away from the profound nature of what was done that day.**

People in our community have the absolute, unfettered right to be left alone in their own home, their most intimate possessions are in that home, their life's possessions accumulated through work are in that home, and they have a right to be left alone. They have a right to come to their house and not face the barrel of a gun. They have the right to come to their house and not be beaten with a bat, or kicked or punched, or in any other manner suffer violence at the hands of three young men, who have decided for various reasons, according to the videos, to break into that particular individual's home.

Albeit his first experience with the criminal justice system, and by his plea of guilty, and by the evidence that I have briefly summarized only in part, **his first interaction with the criminal justice system is a profound one.** He has posed a direct, immediate, and significant threat to the

citizens of this community, and to the two individuals that night who arrived home at the time these gentlemen were burglarizing the home.

.  .  .  .

Mr. Erke, very candidly, this is a sad day. You have put your mom in a position to stand up here in an impossible scenario. Undeniably, she loves you. She became emotional when uttering her first word and answering the first question. By all appearances you love your brother, and by all appearances in the videotape, he loves you.

**But the Court cannot, because of the seriousness of what was done that night, cannot acquiesce to your mother's request for leniency.**

**I was not present when the other pleas were taken, and negotiated dispositions, I have no idea what occurred, I have no idea what was underlying that negotiated disposition. But as I mentioned during the course of this hearing, this Court is not bound by any other negotiated disposition in this case, although it does provide the court some pause.**

After considering in detail the mitigating factors presented in this case, as well as the facts of this case and the companion cases, it is the sentence of this Court that you be adjudicated guilty of all crimes to which you have pled. It is the sentence of this Court that you be delivered to the custody of the Florida Department of Corrections by the Duval County Sheriff, and you are to be delivered to the Florida Department of Corrections at the Florida State Prison, where you shall be incarcerated for a term of 35 years.

.  .  .  .

I am very sorry, but the Court is
compelled to this decision.

Sentencing Tr. at 197-204 (emphasis added).

Notably, in denying Erke's Rule 3.850 motion as to his
ineffectiveness claim relating to the judge's alleged vindictive
sentence, the circuit court stated in pertinent part:

But for counsel's advice[,] Defendant
contends that he would have entered into a
negotiated plea with the State for a 9.2-year
sentence rather than entering the open plea
that led to his thirty-five-year sentence.
Because the State recommended 9.2 years at
sentencing, according to Defendant, the Court
was biased and vindictive for rejecting the
State's recommendation. . . .

Defendant also claims that the Court was
vindictive at sentencing. A vindictive
sentence is a harsher sentence imposed in
retaliation for a defendant exercising his or
her right to proceed to trial. Wilson v.
State, 845 So.2d 142, 156 (Fla. 2003). The
totality of the circumstances will determine
if the sentence was vindictive. Mendez v.
State, 28 So.3d 948, 950 (Fla. 2d DCA 2010).
A court must consider the following factors:
(1) the trial court's participation in the
plea negotiations; (2) any comments the court
made that departed from neutrality; (3) the
disparity between the plea offer and the
sentence imposed; and (4) the lack of facts on
the record that explain the reasons for the
increased sentence. If the totality of the
circumstances does not give rise to a
presumption of vindictiveness, the burden
remains on the defendant to prove actual
vindictiveness. Wilson, 845 So.2d at 156 n.8.

Defendant's allegations do not establish
that the Court was vindictive. First, the
Court did not participate in any plea
negotiations between Defendant and the State.
Second, the record establishes that the Court

28

did not deviate from it[s] neutral role. The
Court rejected the State's recommendation of
9.2 years and imposed the thirty-five-year
sentence after reviewing the evidence,
especially a co-defendant's deposition. (Ex.
G. at 52-54.)[17] The Court found that the co-
defendant's testimony was credible and that it
contradicted Defendant's version of the crime.
The co-defendant's testimony established that
Defendant was an active participant in the
crime. (Ex. G. 54:11-12.)[18] The record
establishes that the Court reviewed and
depended on the record to determine
Defendant's sentence. Third, although there is
a disparity between the alleged plea offer and
the sentence imposed, that is merely one
factor the Court can consider in determining
vindictiveness. The record, however, supports
Defendant's sentence. The Court found that the
co-defendant's deposition testimony was
credible and established that Defendant was
"actively involved in kicking and beating both
victims" and not merely sitting in the car as
Defendant claimed at sentencing. (Ex. G. at
52:16-25; 53:1-12; 54:11-12.)[19] Finally, the
facts on the record belie Defendant's argument
that he was less culpable than his
co-defendants. After reading the
co-defendant's deposition, the Court found
that all three defendants entered the back
door and that they "jimmied" the door with a
pocketknife. (Ex. G. at 53: 15-25.)[20]
Moreover, Defendant testified that he had a
pocketknife in his pocket when the police
arrived. (Ex. G. at 23:1-8.)[21] Considering
the totality of the circumstances, the Court
did not impose a vindictive sentence.

---

[17]   See Resp. Ex. L at 67-69.

[18]   See Resp. Ex. L at 69 (stating Erke "was actively
involved in kicking and beating both victims").

[19]   See Resp. Ex. L at 67-69.

[20]   See Resp. Ex. L at 68.

[21]   See Resp. Ex. L at 65.

Resp. Ex. L at 36-38 (footnotes omitted).

Due process prevents a court from imposing an increased sentence after reconviction following a new trial if that increase is motivated by vindictiveness on the part of the sentencing judge. See Texas v. McCullough, 475 U.S. 134, 137 (1986) (discussing North Carolina v. Pearce, 395 U.S. 711, 723-25 (1969)); see also Alabama v. Smith, 490 U.S. 794, 798 (1989). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) (citing Pearce, 395 U.S. at 738). Under limited circumstances, a presumption of vindictiveness may arise; otherwise, a defendant must prove actual vindictiveness.[22] See Smith, 490 U.S. at 795, 799.

Unlike the defendants in Smith and Pearce, Erke was not resentenced after a successful appeal. But, even if the Court applies the principles espoused in Smith and Pearce to the context of an initial sentencing, Erke cannot show a reasonable likelihood that the sentence imposed was attributable to a vindictive or retaliatory motive or actual vindictiveness by the court.[23] Far from

---

[22] Where the totality of the circumstances does not give rise to a presumption of vindictiveness, the burden remains upon the defendant to prove actual vindictiveness. See Smith, 490 U.S. at 799.

[23] Florida courts extended the concept of judicial vindictiveness to the context of initial sentencings where the sentencing judge had been involved in plea offers or deals that the defendant had rejected. See Wilson v. State, 845 So.2d 142 (Fla.

punishing Erke for exercising a constitutional right, the sentencing judge explained his reasoning and relied on the severity of the crimes and the level of Erke's involvement in deciding to impose a thirty-five year sentence. Accordingly, Erke is not entitled to federal habeas relief on ground one.

## B. Ground Two

As ground two, Erke asserts that appellate counsel was ineffective because he failed to raise the following issue on direct appeal: the trial court violated his right to due process when it considered impermissible sentencing factors to determine his sentence. See Petition at 7. He states that the sentencing judge commented on his sympathy for the victims, and Erke's truthfulness, or lack thereof, and attempt to evade responsibility for his criminal involvement. See id. Erke raised the ineffectiveness claim in his state petition for writ of habeas corpus. See Resp. Ex. S at 4-6. The appellate court ultimately denied the petition on the merits. See Resp. Ex. Y.

---

2003); Baxter v. State, 127 So.3d 726 (Fla. 1st DCA 2013). To determine whether a presumption of vindictiveness applies, Florida courts apply a totality-of-the-circumstances test, which requires a court to consider factors such as the court's participation in plea negotiations, comments made by the court that indicate a departure from the role of neutral arbiter, the disparity between the plea offer and the sentence imposed, and a lack of facts in the record that explains the reasons for the increased sentence. See Wilson, 845 So.2d at 156; see also Williams v. State, 225 So.3d 349, 356-58 (Fla. 3rd DCA 2017). Absent the presumption, a defendant must prove actual vindictiveness. Wilson, 845 So.2d at 156.

Thus, as there is a qualifying state court decision, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[24] Thus, Erke is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Erke's ineffectiveness claim nevertheless is without merit. Given the record, he has not shown a reasonable probability exists that the claim would have been meritorious on direct appeal, if counsel had raised the claim in the manner suggested by Erke. Erke's ineffectiveness claim is without merit since he has shown neither deficient performance nor

---

[24]     Petitioner apparently relies on <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985), which held that the principles of effective assistance of counsel apply to a criminal defendant's first appeal as of right. 469 U.S. 387, 393-94 (1985). In his state habeas petition, however, he argued that his appellate counsel's failure to raise the impermissible sentencing issue on appeal violated his right to effective assistance of counsel, and the appellate court per curiam denied the claim on the merits. He has therefore failed to demonstrate that the state court's decision was contrary to or involved an unreasonable application of <u>Evitts</u>.

resulting prejudice. Accordingly, Erke is not entitled to federal habeas relief on ground two.

## C. Ground Three

As ground three, Erke asserts that appellate counsel was ineffective because he failed to raise the following issue on direct appeal: the trial court violated his right to due process when it imposed a constructively vindictive sentence. See Petition at 8. Erke raised the ineffectiveness claim in his state petition for writ of habeas corpus. See Resp. Ex. S at 6-9. The appellate court directed the State to respond, see Resp. Ex. V; the State did so, see Resp. Ex. W; and Erke filed a reply, see Resp. Ex. X. The appellate court ultimately denied the petition on the merits. See Resp. Ex. Y.

As there is a qualifying state court decision, the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record and applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Erke is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Erke's ineffectiveness claim nevertheless is without merit. On this record, he has not shown a reasonable probability exists that the claim would have been meritorious on direct appeal, if counsel had raised the claim in the manner suggested by Erke.[25] Erke's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.[26] Accordingly, Erke is not entitled to federal habeas relief on ground three.

## D. Grounds Four and Five

Erke asserts that his open plea to the court was involuntary because he relied on counsel's advice that his plea would result in a youthful offender sentence, or "at worst," a sentence that was no greater than the sentences of his more culpable co-defendants (ground four). Petition at 10. Additionally, he states that counsel was ineffective because he advised Erke that an open plea "would likely result" in either a youthful offender sentence or a sentence that was no greater than those of his co-defendants (ground five). See id. at 12. Respondents argue that ground five is procedurally

---

[25]    The appellate court presumably considered and rejected the claim of judicial vindictiveness because counsel filed an Anders brief, see Resp. Ex. B, and Erke raised the issue in his pro se appellate brief, see Resp. Ex. E; see also Resp. Ex. Y (Thomas, J., specially concurring, and citing Towbridge v. State, 45 So.3d 484 (Fla. 1st DCA 2010)).

[26]    See Section VI.A. Ground One.

barred. <u>See</u> Response at 26. Assuming Erke intends to raise the same claims here that he raised in his Rule 3.850 motion in state court,[27] his claims are sufficiently exhausted. The court ultimately denied the post-conviction motion with respect to the issues, stating in pertinent part:

> When determining "whether an allegation is conclusively refuted by the record, [a trial court] may rely on the sworn testimony the defendant has given in the plea colloquy. Any allegations that contradict those answers should not be entertained." <u>Smith v. State</u>, 21 So.3d 72, 76 (Fla. 1st DCA 2009); <u>see</u> <u>Montgomery v. State</u>, 615 So.2d 226, 227 (Fla. 5th DCA 1993) (holding that a court can use the written plea agreement and the plea transcript to refute a defendant's claims). Additionally, a defendant may not seek to go behind his sworn testimony at a plea hearing in a post conviction motion. <u>Stano v. State</u>, 520 So.2d 278, 280 (Fla. 1988); <u>Bir v. State</u>, 493 So. 2d 55, 56 (Fla. 1st DCA 1986); <u>Dean v. State</u>, 580 So.2d 808, 810 (Fla. 3d DCA 1991). The record refutes Defendant's claims. Both the plea colloquy and the plea form Defendant signed immediately prior to the plea colloquy establish that Defendant's plea was knowing and voluntary. Even if counsel did not properly advise Defendant about the plea and did not seek a favorable sentencing cap, Defendant stated during the plea colloquy that he understood that he could receive anywhere from 9.2 years to life for his crimes. (Ex. H at 6:4-11.) He further stated that no one promised him anything other than what had been said on the record and that no one made him any promises as to what kind of sentence the judge would impose. (Ex. H at 8-9.) Defendant's claims that counsel was ineffective for his claims

---

[27]    <u>See</u> Resp. Ex. L at 13-16.

> related to the plea are not supported by the
> record and are thus denied.

Resp. Ex. L at 40. On Erke's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. O, and later denied his motion for rehearing, <u>see</u> Resp. Exs. P; Q.

To the extent that the state appellate court affirmed the trial court's denial on the merits, the Court will address these claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Erke is not entitled to relief on the basis of these claims.

Moreover, even assuming the state appellate court's adjudication of these claims is not entitled to deference, Erke's claims are still without merit. Erke signed the Plea of Guilty form, <u>see</u> Resp. Ex. A at 42-43, and acknowledged at the plea hearing that counsel had reviewed the form with him and had answered his questions, <u>see</u> Plea Tr. at 4, 9. The following colloquy ensued.

THE COURT: Mr. Erke, the State just outlined the charges that you pled to. Do you understand them?

[ERKE]: Yes, ma'am.

THE COURT: That your exposure or your sentencing range is 9.2 years to life, do you understand that?

[ERKE]: Yes, ma'am.

THE COURT: Do you also understand that it will be Judge Soud who will be presiding over that sentencing hearing and deciding your sentence?

[ERKE]: Yes, ma'am.

THE COURT: Not myself, I'm just standing in for him today, you understand that?

[ERKE]: Yes, ma'am.

THE COURT: Did you give your attorney permission to enter the plea directly to the Court?

[ERKE]: Yes, ma'am.

THE COURT: With the understanding that the Judge will decide the appropriate sentence?

[ERKE]: Yes, ma'am.

THE COURT: Are you satisfied with your attorney's legal representation?

[ERKE]: Yes, ma'am.

. . . .

THE COURT: You decided you don't want to go forward with your trial, is that correct?

[ERKE]: That's correct, ma'am.

THE COURT: You've entered this plea because you believe that's in your best interest?

[ERKE]: Yes, ma'am.

THE COURT: Has anyone forced you, threatened you, coerced you or promised you anything other than what's been said on the record today to get you to enter this plea?

[ERKE]: No, ma'am.

THE COURT: Are you under the influence of anything that would affect your ability to understand what you're doing?

[ERKE]: No, ma'am.

THE COURT: Has anyone made you any promises as to what kind of sentence Judge Soud would impose?

[ERKE]: No, ma'am.

THE COURT: Do you understand that it could be anything from 9.2 years to life?

[ERKE]: Yes, ma'am.

THE COURT: Just because at the end of the hearing if Judge Soud determined it was appropriate to give you life, you can't -- just because you don't like the sentence you can't set it aside, you understand that?

[ERKE]: Yes, ma'am.

THE COURT: You have to live with whatever his decision is, do you understand that?

[ERKE]: Yes, ma'am.

Id. at 112-15. After additional questioning, the court found a

factual basis for the plea and that it was freely and voluntarily

entered with a full understanding of the consequences. <u>See</u> <u>id.</u> at 117.

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970); <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences" surrounding the plea. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970) (footnote omitted).

The United States Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). The Court stated:

> Courts should not upset a plea solely because of <u>post</u> <u>hoc</u> assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

<u>Lee v. United States</u>, 137 S.Ct 1958, 1967 (2017). Moreover, "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." <u>Stano v. Dugger</u>, 921 F.2d 1125, 1141 (11th Cir. 1991).

Erke acknowledged that he understood the charges against him and the constitutional rights he was forfeiting. He affirmed that he was not pleading guilty because of any coercion, threats, or promises. After observing Erke and assessing his credibility at the plea hearing, the trial court accepted his guilty plea as voluntarily and intelligently made, and not the result of any force, threat, coercion, or promise. The record supports the trial court's decision. Erke failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Notably, counsel argued for a youthful offender sentence or a sentence less than that of Erke's co-defendants. <u>See</u> Sentencing Tr. at 186-91. Assuming arguendo deficient performance by defense counsel, Erke has not shown any resulting prejudice. Thus, Erke is not entitled to federal habeas relief on grounds four and five.

## E. Ground Six

As ground six, Erke asserts that counsel was ineffective because he advised Erke to reject the State's 9.2-year plea offer. See Petition at 13. He explains:

> Prior to Erke's open plea to the court, the State offered him a minimum guideline sentence of 9.2 years. Counsel advised Erke to reject the offer, and he assured Erke that he could persuade the court to sentence Erke to a youthful offender sentence, or at worst, a sentence no greater than his more culpable co-defendants' [sic]. Counsel was egregiously incompetent to advise Erke to reject 9.2 years and gamble on a youthful offender sentence in the looming shadow of three life sentences.
>
> But for counsel's incompetent advice to reject the State's plea offer, Erke would have accepted the State's plea offer of 9.2 years. The State would not have withdrawn the offer because the State, in fact, actually recommended the same 9.2 years at sentencing. The court would have accepted the offer because Judge McCallum had previously disposed of Erke's co-defendants' cases, and she would have proceeded to sentence Erke at the same time that he entered his plea before her, instead of her proceeding to order a PSI, and Erke would not have been ultimately sentenced before a different judge who had never been confronted with the case before. Erke's sentence, under the State's plea offer terms[,] would have been three times less severe than under the sentence that was imposed.

Id. at 13-14. He raised the claim in his Rule 3.850 motion in state court. See Resp. Ex. L at 17-20. The court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

To be entitled to relief based on a claim that counsel misadvised a defendant to reject a plea offer, the defendant must allege and prove that "(1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced, (2) the defendant would have accepted the plea but for counsel's failures, and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed." Morgan v. State, 991 So.2d 835, 839-40 (Fla. 2008). In Morgan, the court held that the defendant had failed to allege a facially sufficient claim based on counsel's advice to reject a plea offer when the defendant did not prove all three elements:

> In his motion for postconviction relief Morgan alleged that counsel informed him of a plea offer from the State. He further alleged that counsel advised him that she felt she could win at trial or get a reduced offense. Counsel urged him to reject the plea offer, and he did. Lastly, Morgan alleged that he received a greater sentence after trial, and that he would have accepted the plea had he known that counsel would not win. Morgan does not contend that his counsel failed to communicate a plea offer or misinformed him concerning the penalties. Morgan has failed to allege any deficient performance on the part of counsel. The mere fact that Morgan did not prevail at trial does not translate into misadvice. Some specific deficiency on the part of counsel must be alleged. There is no allegation that counsel's assessment of the chances of success at trial was unreasonable under the facts and circumstances of this case or that counsel had not investigated or otherwise was not familiar with the case.

> Id. at 841. Defendant also fails to satisfy
> all three elements insofar as he cannot prove
> that counsel failed to communicate the State's
> alleged plea offer - he quotes it often in his
> Motion. Moreover it was reasonable for counsel
> to believe that Defendant could receive a
> sentence commensurate to that of his
> co-defendants. Counsel need not be perfect,
> but reasonably effective. The Court, however,
> had the authority and discretion to sentence
> Defendant to a term dictated only by the facts
> and the sentencing guidelines. The evidence
> was sufficient to support Defendant's
> thirty-five-year sentence that was within the
> guidelines.

Resp. Ex. L at 38-39. On Erke's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam, see Resp. Ex. O, and later denied his motion for rehearing, see Resp. Exs. P; Q.

To the extent that the state appellate court affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Erke is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Erke's claim nevertheless is without merit. In a motion for reduction of sentence, defense counsel set forth the facts leading up to Erke's open plea to the court.

1.  On March 5, 2009, this Defendant was arrested for Armed Burglary and two counts of Armed Robbery.

2.  Defendant was 18 years old at the time of his arrest and has no criminal history of any kind.

3.  Also arrested and charged with the same crimes were Defendant's older brother Michael Erke and co-defendant Donald Royall Jr.

4.  The State's theory of prosecution targeted Defendant Royall as the main perpetrator in the incident followed by Michael Erke, the Defendant's older brother and friend of co-defendant Royall. Both of these Defendants had prior felony arrests and convictions.

5.  Based on their records and level of participation in this incident, the State intended to offer Defendant Royall a minimum of 15 years in Florida State Prison and Defendant Michael Erke a minimum of 10 years in Florida State prison.

6.  As such, the State's position, due to Defendant Nathaniel Erke's young age and lack of criminal record, was to offer him the opportunity to plead to the charge and cooperate with the State by testifying truthfully regarding the incident. In turn, the State would make a recommendation to the Court as to an appropriate sentence based on his level

of cooperation, which would entail a sentence less than what the co-defendants received.

7.  Based on the above, Mr. Erke agreed in principal to cooperate with the State, however, prior to the State conducting a proffer of the Defendant, co-Defendant Royall pled to the State's offer of 15 years in Florida State Prison for his role in the incident and Defendant Michael Erke, pled guilty to a negotiated sentence of 10 years [in] Florida State Prison for his role in the above referenced incident.

8.  Negotiations continued between the State and Defense in an attempt to obtain a youthful offender sentence for Mr. Erke. However, based on a recent change in office policy, the State would/could not offer a youthful offender sentence.

9.  The State's position in terms of sentencing for Mr. Erke if he pled guilty would be that they were not opposed to a youthful offender sentence for him if the Court deemed it appropriate, based on his lack of record and level of involvement/participation in this incident as it relates to his co-defendant[s'] involvement.

10. As such, on February 25, 2010, Mr. Erke pled guilty to the Court as a principal to the acts committed by his two more culpable co-defendants, after discussing all of the above with the undersigned attorney and after speaking to the prosecutor assigned to his case.

11. On April 7, 2010, a sentencing hearing was held by the Court, whereby the State set forth the facts of the case and recommended a guideline sentence of approximately 9 years for the Defendant due to the fact that this Defendant was

> the least culpable of the three
> defendants involved in the crime.

> 12. The defense argued for youthful offender
> and the court sentenced the Defendant to
> 35 years [in] Florida State Prison.

Resp. Ex. A at 87-88. The court denied the defense's request to

reduce the sentence. See id. at 92.

At sentencing, the prosecutor stated in pertinent part:

> So, the State's position is that we
> recommend the guidelines, simply because we
> concede that he has no prior criminal record,
> and we do believe that his involvement as a
> princip[al] is a result of him being unduly
> influenced by his brother. He had no prior
> even juvenile record before this incident. So,
> we've taken that into consideration in making
> our recommendation and when [we] made our
> offer, and when we offered him to cooperate.
> Unfortunately, that didn't take place.

> So, at this point, our position hasn't
> changed. Based on having no record, however,
> we are concerned that the defendant hasn't
> admitted his involvement, and it's very clear
> from the evidence that we would have presented
> at trial that he was involved. So, that's the
> State['] s position, and we're recommending the
> guidelines.

Sentencing Tr. at 186. Defense counsel stated that, during the

negotiations, Erke attempted to obtain a youthful offender

sentence, see § 958.04(1), Fla. Stat. (2008),[28] or one that took

---

[28] Florida Statutes section 958.04(1) provides that the
court may sentence as a youthful offender any person:

> (a) Who is at least 18 years of age or who has been
> transferred for prosecution to the criminal division of
> the circuit court pursuant to chapter 985;

into consideration mitigating factors. <u>See</u> <u>id.</u> at 186-88. Counsel explained that Erke entered an open plea to the court with hopes that the sentencing court would be more lenient than the State's 9.2-year plea offer.

> Having said that, the PSI recommends a period of five years, which is below the guidelines. **The only way that we could get actually below the guidelines is for [Erke] to plead to the Court, and that's the reason that he did do that.** The Court is the only person at this juncture that could offer or go below the guidelines, and we just didn't feel that

---

> (b) Who is found guilty of or who has tendered, and the court has accepted, a plea of nolo contendere or guilty to a crime that is, under the laws of this state, a felony if the offender is younger than 21 years of age at the time sentence is imposed; and
>
> (c) Who has not previously been classified as a youthful offender under the provisions of this act; however, a person who has been found guilty of a capital or life felony may not be sentenced as a youthful offender under this act.

Notably, "[a] life felony is not the same as a first-degree felony punishable by life." <u>James v. State</u>, 775 So.2d 347, 348 (Fla. 1st DCA 2000) (per curiam) (citing <u>Burdick v. State</u>, 594 So.2d 268-69 (Fla. 1992)). The offenses of which Erke was convicted, armed burglary and armed robbery, were first degree felonies punishable by life imprisonment. <u>See</u> <u>Black v. State</u>, 52 So.3d 830 (Fla. 4th DCA 2011) ("Armed robbery and armed burglary are first-degree felonies punishable by life, not life felonies.") (citing Fla. Stat. §§ 810.02(2)(b), 812.13(2)(a)); <u>Lee v. State</u>, 399 So.2d 1027, 1028 (Fla. 1st DCA 1981) (per curiam) (stating armed robbery is a "felony of the first degree," not a "life felony," and therefore, the trial judge incorrectly found that defendant's conviction for armed robbery precluded his treatment as a youthful offender) (internal quotations omitted), <u>pet.</u> <u>for</u> <u>rev.</u> <u>denied</u>, 407 So.2d 1106 (Fla. 1981); <u>see</u> <u>also</u> Resp. Ex. A at 15, Information; 44, Judgment (stating the three counts are first degree felonies punishable by life). Thus, Erke was eligible for a youthful offender sentence.

even though he's charged as the other individuals who had pled to this, they're all charged the same way. And unfortunately under the negotiations set forth, the State wasn't going to allow him to plead to just one charge to get the guidelines lower. So, we had offered several different times to try to get him to plead lower, but that just wasn't possible. **So, the only way that we could actually get him in front of the Court and get him in a position to help himself and get below the guidelines is to have him plead straight up. And that's exactly what he did, even though his exposure is life, he took that chance.**

. . . .

And if the Court was to go below the guidelines, and to see fit that he did, in fact, put on enough mitigation with regards to his lack of criminal record, his relatively lack of involvement, based on his level of culpability, his remorse, those such things required under the statute, that the Court go below the guidelines and consider a youthful offender sentence . . . .

So, really his only option is for the Court to consider a youthful offender sentence on him, or the five years recommended by the Department of Corrections, I would think would be the best way to go, if the Court saw fit to deviate from the guidelines.

Id. at 188-91 (emphasis added).

All that is constitutionally required is reasonably effective counsel, not perfect or error-free counsel. "Strickland does not guarantee perfect representation, only a 'reasonably competent attorney.'" Richter, 562 U.S. at 110 (quoting Strickland, 466 U.S. at 687) (internal quotation omitted). In the instant action, counsel's representation did not so undermine the proper

functioning of the adversarial process that Erke was deprived of a fair process. Notably, "there is no expectation that competent counsel will be a flawless strategist or tactician." Id. Indeed, an attorney "may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." Id.

Erke has the burden to show that counsel's representation fell below an objective standard of reasonableness. He has failed to meet this burden. Counsel's advice to Erke that he reject the State's 9.2-year plea offer was not unreasonable in light of the circumstances. On this record, counsel was not deficient when he advised Erke that the sentencing judge would consider mitigating factors (Erke's young age at the time of the crime, lack of any prior criminal record, and lesser involvement in the crimes as compared to the co-defendants as well as the co-defendants' ten and fifteen-year negotiated sentences). Indeed, counsel argued for a downward departure sentence based on such mitigating factors, see Sentencing Tr. at 186-91, and the court considered "in detail" those mitigating factors as well as the facts in Erke and his co-defendants' cases, see id. at 203. Thus, it was not unreasonable for counsel to believe that Erke could receive a more lenient sentence, one that was less than the State's offer. Erke is not entitled to federal habeas relief on ground six.

**F. Ground Seven**

As ground seven, Erke asserts that counsel was ineffective because he failed to advise him that the State would introduce the co-defendant's recorded confession, and counsel would not object. See Petition at 15. Erke no longer intends to pursue ground seven. See Reply at 18 (withdrawing his arguments as to ground seven); see also Petitioner's Reply to Court Order (Doc. 13). Therefore, the Court will not address ground seven.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Erke seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Erke "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Erke appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of April, 2018.

MARCIA MORALES HOWARD
United States District Judge

sc 4/9
c:
Nathaniel Erke, FDOC #J41185
Counsel of Record